UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEN'S FOODS, INC.,        )
                     )
        Plaintiff,    )         CIVIL ACTION
    v.             )         NO. 01-11878-NG
                     )
KEN'S STEAK HOUSE, INC.,   )
                     )
        Defendant.   )

# REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS SEEKING CANCELLATION OF TRADEMARKS

September 24, 2003

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Ken's Foods, Inc. ("KFI"), is in the business of manufacturing, packaging and selling bottled salad dressings, marinades and other food products.  The defendant, Ken's Steak House, Inc. ("KSH"), owns and operates a restaurant known as Ken's Steak House in Framingham, Massachusetts (the "Restaurant").  One of the salad dressings sold by KFI is based on the dressing originally created for use in the Restaurant, a fact which is included in much of KFI's marketing materials.

KFI is the record owner of the federally registered trademarks "KEN'S" and "KEN'S STEAK HOUSE" which were issued in 1980.  KFI commenced this action on November 1, 2001, alleging that KSH's use of these trademarks constitutes federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair

competition based on false designation of origin in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), and unfair and deceptive practices in violation of Mass.

Gen. Laws ch. 93A, §§ 2 and 11.  The basis of KFI's complaint is that KSH has engaged in

"false designation of origin, sponsorship and affiliation."  (Complaint ("Compl.") ¶ 1).

KSH has filed a number of counterclaims asserting, <u>inter</u> <u>alia</u>, that it is the true owner of

the trademarks and that KFI uses "KEN'S" and "KEN'S STEAK HOUSE" under either an

express or implied license.

Presently before this court is "Plaintiff Ken's Foods, Inc.'s Motion for Partial

Summary Judgment" (Docket # 130) whereby KFI is seeking to dismiss Counts X-XIII of

KSH's counterclaims.  In those counts, KSH is seeking cancellation of the trademarks on

the grounds that (1) the trademarks were obtained by fraud, thereby warranting cancellation

under 15 U.S.C. § 1115(b)(1); (2) the trademarks falsely suggest a "connection" with KSH

in violation of 15 U.S.C. § 1052(a); and (3) the trademarks amount to a misrepresentation

of source in violation of 15 U.S.C. § 1064(3).

For the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that KFI's Motion for Partial Summary Judgment be

ALLOWED as to the claims based on fraud and misrepresentation of source, and DENIED

as to the counts alleging false connection.  In addition, this court recommends that KFI's

motion for summary judgment be DENIED to the extent that it asserts a defense of laches.

## II. <u>STATEMENT OF FACTS</u>[1]

In or about 1940, Ken and Florence Hanna opened a restaurant called 41 Café in Framingham, Massachusetts, which later became known as Ken's Steak House (the "Restaurant"). (Compl. ¶ 10; DF ¶ 3). In or about 1954, the Hannas incorporated Ken's Steak House, Inc. to own the Restaurant. (DF ¶ 3). The recipe for the salad dressing served at the Restaurant was based, in whole or in part, on a recipe of Florence Hanna's mother. (Compl. ¶ 11).

At some point in the mid-1950's, a customer named Frank Crowley approached Ken Hanna about bottling and selling the salad dressing. (<u>See</u> <u>generally</u> Compl. ¶¶ 12-16). In 1958, Ken's Foods, Inc. was incorporated to manufacture and sell the salad dressing. (<u>See</u> PF ¶ 6; DF ¶ 6). KFI was owned equally by Ken and Florence Hanna (50%) and Frank and his wife Louise Crowley (50%). (PF ¶ 7; DF ¶ 7).

KFI has grown steadily since its incorporation. (Compl. ¶ 40; PF ¶ 60; DF ¶ 60). KSH remains a single-restaurant business. (Compl. ¶ 9). KSH has continuously sold KFI's salad dressing from a display case in the Restaurant. (PF ¶ 13; DF ¶ 13). For its part, KFI

---

[1] KFI has filed a Local Rule 56.1 Statement of Undisputed Facts in support of its motion (Docket # 132) which will be cited as "PF." The exhibits thereto are attached to the Affidavit of James M. Wodarski, Esq. ("<u>Wodarski Aff.</u>") (Docket # 133). KSH has filed a response to plaintiff's statement of facts (Docket # 148) which will be cited as "DF." The exhibits thereto have been submitted as a separate appendix (Docket # 149) and will be cited as "KSH Ex. __." Unless otherwise indicated, citations to the Complaint ("Compl.") are made when allegations are admitted.

has, over the years, continuously advertised its ties to the Restaurant and used Ken Hanna's

likeness and name in its advertising.  (<u>See</u> <u>generally</u> PF ¶ 14; DF ¶ 14).

### Registration of the Trademarks

On or about April 19, 1976, KFI submitted three separate federal trademark

applications to the United States Patent and Trademark Office (the "PTO") for the marks

"KEN'S," "KEN'S STEAK HOUSE," and "BORN IN A GREAT STEAK HOUSE" on food

dressings, marinades and food sauces.  (PF ¶ 18; DF ¶ 18).  The declarations were signed by

KFI's then general manager, Joseph Shay.  (PF ¶ 19; DF ¶ 19).  The declarations for the

"KEN'S" and "KEN'S STEAK HOUSE" trademarks explicitly stated that "[a] cofounder of

applicant in 1958 owned an interest in a restaurant doing business under the name and style

of 'Ken's Steak House,' which restaurant is still in business under such name and style."

(PF ¶ 19; DF ¶ 19).  The application for the trademark "BORN IN A GREAT STEAK

HOUSE" did not include the "cofounder" language because KSH had never used that

trademark in connection with the Restaurant.  (PF ¶ 20; DF ¶ 20).  Immediately following

this cofounder language, the declaration for the KEN'S and KEN'S STEAK HOUSE marks

included the following "exclusive use" language:

> The undersigned Joseph F. Shay declares that: he is General Manager
> of applicant corporation and is authorized to execute this declaration
> on behalf of said corporation; he believes said corporation to be the
> owner of the mark sought to be registered; [and] *to the best of his*
> *knowledge and belief no other person, firm, corporation or*
> *association has the right to use said mark in commerce, either in*
> *the identical form or in such near resemblance thereto as to be*
> *likely, when applied to the goods of such other person, to cause*
> *confusion, or to cause mistake, or to deceive ....*

(Wodarski Aff. Exs. 12, 13) (emphasis added).  It is this italicized language which KSH

challenges as being fraudulent and warranting cancellation of the trademarks.

The PTO questioned Mr. Shay's authority as general manager to sign the trademark

applications, as a result of which substituted declarations were signed by Victor Galvani,

clerk of KFI.  (See PF ¶¶ 21-24).  Since the "BORN IN A GREAT STEAK HOUSE"

declaration was used as the basis for drafting the substituted declarations, the co-founder

language was inadvertently omitted from the declarations signed by Mr. Galvani in

connection with the "KEN'S" and "KEN'S STEAK HOUSE" applications.  (PF ¶ 25; DF

¶ 25).[2]  Nevertheless, Mr. Galvani provided the same certification as Mr. Shay with respect

to KFI's ownership of the marks and exclusive use as quoted above.  (Wodarski Aff.

Exs. 19, 20).  Again, KSH contends that this assertion renders the declarations fraudulent,

thereby warranting the cancellation of the marks.

The PTO issued registrations for the mark "KEN'S" on April 29, 1980 and for the

mark "KEN'S STEAK HOUSE" on May 20, 1980.  (PF ¶ 31; DF ¶ 31).  Joseph Shay

testified in his deposition that he brought the registrations for "KEN'S" and "KEN'S

STEAK HOUSE" to the Restaurant to show Ken Hanna personally.  (PF ¶ 35).  However, it

---

[2] While originally challenging this omission as being fraudulent, KSH has dropped
this claim.  See Defendant's Opposition ("Def.'s Opp.") (Docket # 147) at 3 n.1

is unclear if either Joseph Shay or Ken Hanna understood the legal implications the

registrations had on KSH's right to use the marks.  (See DF ¶ 35).

### Third Party Use of "Ken's"

In early 1985, Attorney W. Hugo Liepmann of the law firm of Lahive & Cockfield,

located in Boston, Massachusetts, learned that an Oklahoma company named Ken's

Restaurant Systems, Inc., was seeking to register the trademark and service mark "KEN'S"

in connection with restaurant services.  (PF ¶ 36; DF ¶ 36).  Attorney Liepmann was

counsel to KFI, although he and/or his law firm represented KSH as well in connection with

their opposition to Ken's Restaurant Systems' trademark application.  (PF ¶¶ 37-38; DF

¶¶ 37-38).  In correspondence with Ken's Restaurant Systems, Inc., Attorney Liepmann's

associate, William Scofield, wrote that his clients objected to the proposed use of the mark

"KEN'S" because:

> Ken's Steak House has been operating "KEN'S", a restaurant under the
> name and mark, and under the mark "KEN'S", since at least the
> 1940's.  The restaurant has developed a national reputation and
> clientele, complete with its own credit cards, and advertises interstate
> through television, radio, newspapers and magazines.
>
> Ken's Foods, Inc. is the owner of Principal Register Registration
> No. 1,134,235 for the mark "KEN'S" for salad dressing and other
> food products.  The registration issued in 1980, and recites use since
> 1961.  The business of Ken's Foods under this mark includes
> marketing food products on the retail level, as well as to institutions,
> including restaurants.
>
> Our clients have built a national reputation and good will based on the
> recognition of their services and products under the mark "KEN'S".
> Their uses of "KEN'S" clearly pre-date by many years the 1983 use —
> and even the different uses from 1965 — which your client claims.

(<u>Wodarski Aff.</u> Ex. 23).  Around this time, Mark Hanna, Sr. (then President of KSH) and

Ken Hanna were aware that KFI owned registered trademarks, and that KSH did not,

although it is not at all clear from the record that they were aware that as a result KFI could

limit KSH's use of the marks "KEN'S" or KEN'S STEAK HOUSE."  (<u>See</u> PF ¶¶ 40-45; DF

¶¶ 40-45).

On or about September 5, 1986, Attorney Scofield wrote to Mark Hanna of KSH

regarding a settlement that had been reached with Ken's Restaurant Systems and enclosed

an application for registration of "KEN'S STEAK HOUSE."  (PF ¶ 45; DF ¶ 45).  As

Attorney Scofield wrote:

> As we discussed, the Patent Office may raise a question regarding this
> application to register KEN'S STEAK HOUSE, in light of the prior
> registration of the same mark by Ken's Foods, Inc. for salad dressings.
> <u>Although there is some uncertainty, we believe that the mark is
> registerable separately by you for restaurant services</u>.

(<u>Wodarski Aff.</u> Ex. 24) (emphasis added).  On or about October 2, 1986, Attorney Scofield,

on behalf of KSH, filed an application for registration of "KEN'S STEAK HOUSE" for

restaurant services.  (PF ¶ 46; DF ¶ 46).  Mark Hanna, as president of KSH, signed the

declaration and made the same "exclusive use" representation as had been made by

Messrs. Shay and Galvani on behalf of KFI.  (<u>Compare</u> <u>Wodarski Aff.</u> Ex. 12, 19 & 25).

According to Attorney Scofield, to the best of his memory (the file having been lost), the

PTO issued an "office action" stating that there was a likelihood of confusion with

registrations by Ken's Restaurant Systems, and KFI, and that he had responded on behalf of

KSH by taking the position that there was no likelihood of confusion.  (<u>See</u> PF ¶¶ 47-48;

DF ¶¶ 47-48; Wodarski Aff. Ex. 26).  The KSH application was abandoned, although the record does not state why.

### KFI's Challenges to KSH's Use of the Marks

On November 11, 1993, Attorney Liepmann, "on behalf of our client Ken's Foods, Inc.," wrote to Mark Hanna as president of KSH objecting to KSH's use of the logo "KEN'S STEAK HOUSE" along with a picture of a salad dressing bottle in Yellow Page advertisements for the Restaurant, on the grounds that KFI owned the federal registrations of the trademarks "KEN'S," "KEN'S STEAK HOUSE" and "BORN IN A GREAT STEAK HOUSE."  (Wodarski Aff. Ex. 27).  Mark Hanna responded by letter dated November 30, 1993, which recognized that KFI did hold the trademarks "as they relate to salad dressing" but expressing surprise that there would be any objection to the advertising in light of the many years of cooperation between the parties and the references in KFI's advertising to both the Restaurant and Ken Hanna.  (Wodarski Aff. Ex. 29).  Nevertheless, KSH agreed to modify its advertising.  (Id.)

On September 16, 1996, new counsel for KFI, Samuel Starr of Mintz, Levin, wrote to Timothy Hanna, who was now the president of KSH, objecting again to a Yellow Page advertisement.  (Wodarski Aff. Ex. 30).  On November 4, 1996, counsel for KSH advised Attorney Starr that KSH was "in the process of revising all phone book advertising to remove all references to any intellectual property of Ken's Foods, Inc."  (Wodarski Aff. Ex. 31).  Specifically, KSH agreed to stop using a picture of the salad dressing bottle and the phrase "Home of Ken's Famous Dressings."  (See id. Exs. 32, 33).

KFI commenced this action on November 1, 2001 challenging KSH's use of its trademarks.  Additional facts will be included below as appropriate.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one which has the "potential to affect the outcome of the suit under the applicable law."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, . . . would permit a rational factfinder to resolve the issue in favor of either party."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).

To prevail on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).  In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994) (internal citations and quotations omitted).

**B.   Cancellation of Trademarks Based on Fraud**

Counts XII and XIII of KSH's Counterclaim seek cancellation of the trademarks

"KEN'S STEAK HOUSE" and "KEN'S" on the ground that they were obtained by fraud.  As

explained by KSH in its opposition to the motion for summary judgment, these claims are

based on the declarations signed by Mr. Shay and Attorney Galvani in which they assert that

to the best of their "knowledge and belief no other person, firm, corporation and

association has the right to use said mark in commerce, either in the identical form or in

such near resemblance thereto as to be likely, when applied to the goods of other such

person, to cause confusion, or to cause mistake or to deceive."  (Wodarski Aff. Exs. 12, 13,

19 & 20; Def.'s Opp. at 3).  This court finds that no reasonable jury could conclude that

KSH has met its burden of proving fraud by clear and convincing evidence, and, therefore,

recommends that KFI's motion for summary judgment on Counts XII and XIII be allowed.

Where, as here, a registrant has used its trademark in connection with the goods or

services specified on the registration for five continuous years after the registration date,

the trademark is deemed "incontestible under 15 U.S.C. § 1065."  Texas Pig Stands, Inc. v.

Hard Rock Café Int'l, Inc., 951 F.2d 684, 689 n.5 (5th Cir. 1992), and cases cited.  "Once a

mark has become incontestable under § 1065, the registration constitutes 'conclusive

evidence' of the registrant's right to use the mark, 'subject only to the . . . defenses

enumerated in 15 U.S.C. § 1115(b).'"  Id. at 690 (citations omitted); accord Ked's Corp. v.

Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989).  These defenses include that

"the registration or the incontestible right to use the mark was obtained fraudulently[.]"  15

U.S.C. § 1115(b)(1).  Proof of such fraud will result in the cancellation of a registration.

See 15 U.S.C. § 1064(3); see also Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc., 951

F.2d at 693.

To cancel a trademark for fraud, a party must prove "(1) the false representation

regarding a material fact; (2) the registrant's knowledge or belief that the representation is

false (scienter); (3) the intention to induce action or refraining from action in reliance on

the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages

proximately resulting from such reliance."  San Juan Prods., Inc. v. San Juan Pools of

Kansas, Inc., 849 F.2d 468, 473 (10th Cir. 1988).  "The knowing misrepresentation must be

material," i.e., it should rise to the level that "the registration should not have issued if the

truth were known to the examiner."  Id. (quoting 2 J. McCarthy, Trademarks and Unfair

Competition § 31:21, at 606).  The challenger must establish these elements by "clear and

convincing evidence."  The Money Store v. Harriscorp Finance, Inc., 689 F.2d 666, 670 (7[th]

Cir. 1982), and cases cited.

As a recognized authority on trademark law has noted:

> The type of fraud allegation that has given rise to the largest number
> of cases is the charge that registrant signed the application oath
> knowing of use of the mark by others.  The other side of this coin is
> the allegation that the applicant has a duty to disclose to the Patent and
> Trademark Office known uses by others.  While such charges of fraud
> and non-disclosure have uniformly been rejected, litigants continue to
> pursue them vigorously....

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:75 at

31-134 (4th Ed. 2003) (hereinafter "McCarthy on Trademarks").  The difficulty in proof

stems, in part, from the fact that the "oath" relates to the best of the declarant's knowledge and belief, and therefore at issue is the declarant's "subjective, honestly held, good faith belief." San Juan Prods., Inc. v. San Juan Pools, 849 F.2d at 472 (citations omitted).  Thus, there must be "a deliberate attempt to mislead the Patent Office into registering the mark." The Money Store v. Harriscorp Finance, Inc., 689 F.2d at 670, and cases cited.  "Merely making a false statement is not sufficient to cancel a mark." L.D. Kichler v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999), and cases cited.

This court recognizes that summary judgment should be used "sparingly" on claims, such as fraud, that turn on a determination of the declarant's subjective intent and credibility. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S. Ct. 486, 491, 7 L. Ed. 2d 458 (1962).  Nevertheless, summary judgment is not "automatically precluded" in cases where motive and intent are at issue. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).  Here, the record is simply insufficient for a jury to find by clear and convincing evidence that KFI had the requisite intent to deceive.

With respect to Mr. Shay's declarations,[3] immediately prior to his "exclusive use" attestation is the statement that "[a] cofounder of applicant in 1958 owned an interest in a restaurant doing business under the name and style of 'Ken's Steak House,' which restaurant is still in business under such name and style." (Wodarski Aff. Exs. 12, 13).  It is

_____

[3] KFI contends that these declarations are irrelevant since they were rejected by the PTO.  (See Plaintiff's Reply Memorandum ("Pl.'s Reply Mem.") (Docket # 153) at 2 n.2.) This issue does not need to be decided since the record shows that Mr. Shay's "intent" was the same as Attorney Galvani's.

impossible to conclude that Mr. Shay intended to hide the prior and continued use of Ken's Steak House by the Restaurant when it was disclosed in the declaration.  This court finds no legal or factual support for KSH's argument that this part of the declaration should simply be ignored as being "superfluous."  (See Def.'s Opp. at 6-7).

It is undisputed that the co-founder representation was omitted from Attorney Galvani's declarations by accident.  Since Attorney Galvani obviously intended to disclose the Restaurant's use, again the record does not support a finding of intent to deceive on his part either.  Moreover, Attorney Galvani testified that he believed that Ken's Steak House had given Ken's Foods the right to use the name in connection with the salad dressing business.  (See KSH Ex. N (Galvani Dep.) at 127, 200-11; see generally Def.'s Opp. at 9; Pl.'s Reply Mem. at 2-4).  Whether Mr. Galvani was correct or not is not controlling — what is at issue is whether he intentionally misled the PTO.  See L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999) (holding that the high level of intent required to prove fraud is not satisfied merely by making a false statement).  "[I]t is not fraud to sign an application oath if applicant knows of use by others but holds a good faith belief that differences in the marks or in the goods or services preclude a likelihood of confusion between its mark and that used by others."  McCarthy on Trademarks, § 31:77 at 31-142.  In view of the differing uses of the marks – for salad dressing and a restaurant, the record does not support a finding of deceit.

The facts relied on by KSH do not create a genuine dispute as to material facts regarding Mr. Galvani's intent.  KSH argues that Mr. Galvani misunderstood trademark law,

"dined at the restaurant, where the salad dressing was featured on the menu and sold, and was obviously aware of the inevitable confusion from both parties' use of the same marks" to establish its claim of fraud.  (Def.'s Opp. at 9).  Such "facts," however, go no further than establishing that Mr. Galvani knew that the Restaurant used the marks, an assertion which was inadvertently omitted from his declaration.  These facts do not indicate an intent to deceive the PTO which is necessary to cancel the marks.

The parties also refer in passing to the intent of Attorney Liepmann who drafted the declarations, although he did not sign them.  Mr. Liepmann testified that he understood that the two companies "were engaged in different kinds of commerce, one dealing with restaurant service, one dealing with products; and it was my understanding that there had been no instance of actual confusion between the two businesses between the 1958 period, the first use we cited in the application, and the filing date, which was 1976."  (KSH Ex. M (Liepmann Dep.) at 42).  KSH argues that Attorney Liepmann did not have all the facts when he concluded that there was no confusion.  (Def.'s Opp. at 10).  However, the issue of confusion is not controlling – the correct inquiry is whether there was an intent to deceive. Knowledge that another entity has the right to use the name in a limited territory or for a different purpose does not render a declaration of exclusive use fraudulent.  See San Juan Prods., Inc. v. San Juan Pools, 849 F.2d at 473, and authorities cited.  Here, the record establishes that those involved with the declaration understood that the Restaurant was using the name Ken's Steak House but believed, correctly or not, that Ken's Foods owned the marks for the salad dressing and that these uses were not incompatible.  Moreover, they

-14-

intended to reveal this information to the PTO.  KSH cannot establish its claim of fraud by clear and convincing evidence.[4]

Finally, KSH argues that there was actual confusion between the companies, and that KFI's applications would have been rejected if the Restaurant's use of the marks was revealed, as evidenced by the later "rejection" of KSH's application.  (See Def.'s Opp. at 4-6).  Not only does this argument fail to focus on the relevant issue of the applicant's intent, but it reads too much into the PTO's handling of KSH's application.  As detailed above, all that the record supports is that the application was abandoned after KSH objected to any claim of confusion by the PTO, so no final decision was ever reached on the merits of the application.  Since KSH has not submitted evidence of an intent to deceive the PTO, this court recommends that KFI's motion for summary judgment on the fraud claims be allowed.

### C.  Cancellation of Trademarks Based on False Suggestion of a Connection

In Counts X and XII of its Counterclaims, KSH alleges, inter alia, that the trademark registrations for "KEN'S" and "KEN'S STEAK HOUSE" should be cancelled on the grounds that they falsely suggest a connection with KSH in violation of § 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).  Taking a position which this court finds to be in conflict

---

[4] While it is not controlling, this court notes that Mark Hanna, as President of KSH, signed the same "exclusive use" declaration in 1986 with knowledge of the "prior registration of the same mark by Ken's Foods, Inc."  (Wodarski Aff. Exs. 24, 25).  This further supports the conclusion that the parties believed the representation to be true despite the use of the same marks by both companies for different purposes.

with the basis of its own complaint, KFI has moved for summary judgment on these counterclaims because KSH's facts establish a "longstanding commercial relationship, and common ownership, between the parties" and that, therefore, the suggestion of a "connection" is not false.  (See Plaintiff's Memorandum ("Pl.'s Mem.") (Docket # 131) at 9-10).

KSH has brought this counterclaim as an "alternative" basis for relief, arguing that it believes it has the right to control KFI's use of the "KEN'S STEAK HOUSE" mark through an express or implied license.  If such a license exists, KSH agrees that the counterclaim fails

> because the requisite connection between Ken's Steak House and Ken's Foods' goods would exist.  However, if this Court finds that no such license exists, and that Ken's Steak House has not had the right to control the nature and quality of the salad dressing sold by Ken's Foods under the KEN'S STEAK HOUSE marks, then the connection suggested by Ken's Foods' use of the marks is false, and Ken's Steak House's right to control its corporate identity requires cancellation of Ken's Foods' registrations.

(Def.'s Opp. at 21).

This court agrees that there are material facts in dispute concerning the scope of the connection between KSH and KFI.[5]  Consequently, this court recommends that the motion for summary judgment on the issue of false connection be denied.

The Lanham Act § 2(a), 15 U.S.C. § 1052, provides that registration of a trademark may be denied when the mark "consists of or comprises . . . matter which may . . . falsely suggest a connection with persons, living or dead."[6]  The statute was intended to preclude registration of marks which infringe upon the "right to control the use of one's identity." Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co., Inc., 703 F.2d 1372, 1376 (Fed. Cir. 1983).  Accord Bd. of Trs. of Univ. of Ala. v. BAMA-Werke Curt Baumann, 231 U.S.P.Q. 408, 410 (TTAB 1986) (right to control use of one's identity may have been the legal concept behind § 2(a)); Consol. Natural Gas Co. v. CNG Fuel Sys., Ltd., 228 U.S.P.Q. 752, 754 (TTAB 1985) (§ 2(a) protects an individual's control over the use of his 'identity'

---

[5]  KFI cites to only KSH's allegations and the testimony of KSH's principals and officers to support the existence of a connection between the Restaurant and KFI.  (See Pl.'s Mem. at 9).  However, since KFI has not withdrawn its complaint, which is based on an inconsistent version of events, the facts are clearly disputed.  This court believes that it would be inappropriate in the context of this case to assume that facts relating to the parties' relationship are undisputed in connection with some of the counterclaims, while allowing KFI to take a contrary position in connection with its own claims which are not subject to a motion for summary judgment.  On the other hand, this court does not find it inappropriate for KSH to argue either a "license" or "no connection" as alternative theories.  KSH has consistently argued that it is entitled to a level of control over KFI's products and/or marketing.  It is not contending that different facts exist – it is just raising different legal theories in the event that the facts are determined insufficient to establish the legal rights of control that KSH believes it has.

[6]  A "person" may be a corporation or other entity.  See Opryland USA, Inc. v. Great Am. Music Show, Inc., 970 F.2d 847, 853 (Fed. Cir. 1992).

or 'persona').  To prevail on a claim of false connection, the challenger must demonstrate "(i) that the defendant's mark is the same or a close approximation of plaintiff's previously used name or identity; (ii) that the mark would be recognized as such; (iii) that the plaintiff is not connected with the activities performed by the defendant under the mark; and (iv) that the plaintiff's name or identity is of sufficient fame or reputation that when the defendant's mark is used on its goods or services, a connection with the plaintiff would be presumed." Buffet v. Chi-Chi's, Inc., 226 U.S.P.Q. 428, 429 (TTAB 1985), and cases cited.  Accord In Re Sloppy Joe's Int'l, Inc., 43 U.S.P.Q.2d 1350, 1353 (TTAB 1997).  By its motion for summary judgment, KFI contends that KSH cannot satisfy the third and fourth elements.

The connection "necessary to entitle applicant to register the involved mark" is not specifically defined by statute, but has been defined by case law as "a commercial connection, such as an ownership interest or commercial endorsement or sponsorship of applicant's services[.]"  In re Sloppy Joe's Int'l, Inc., 43 U.S.P.Q.2d at 1352.  Consequently, KFI points to KSH's "sponsorship" and "commercial endorsement" of its use of the name "KEN'S" and "KEN'S STEAK HOUSE" in connection with their "common marketing and advertising" to support its motion for summary judgment.  (See PF ¶ 14). However, this court finds that the "connection" on which KFI relies may not be sufficient under the statute.

That the parties have engaged in joint marketing does not eliminate the factual dispute concerning the existence of a "connection."  It is undisputed that KSH does not own any interest in KFI.  To the extent that commercial endorsement or sponsorship has been

deemed to constitute a "connection," that relationship must be read in the context of the

statutory goal of enabling one "to control the use of one's identity."  Thus, even if there is

sponsorship or endorsement, the one whose identity is being used must still retain some

control over such use in order to avoid a false connection finding.  Cf. Buffet v. Chi-Chi's,

Inc., 226 U.S.P.Q. at 429 (noting that challenger still has the right to control use of its

identity even if sponsorship or endorsement exists).  This court does not need to decide

whether the level of control includes the right to control the quality of the product, as KSH

contends, or simply the right to withdraw the endorsement or sponsorship.  According to

KFI, no level of control on the part of KSH exists.  Therefore, the existence of a

"connection" as that term is used in the Lanham Act remains in dispute.

Moreover, KFI has asserted unambiguously in its complaint, in allegations which are

supported by affidavits,[7] that any assertion of a "connection" or "sponsorship" between the

companies is false.  For example, KFI has alleged in its complaint:

> 3.   This lawsuit also seeks to prevent KSH from confusing, mis-
> leading and deceiving consumers, and competing unfairly with KFI,
> and injuring KFI and KFI's trademarks and good will, by, among other
> things, falsely representing ... that KSH is affiliated in any way with, or
> sponsors KFI in connection with KFI's manufacture and sale of KFI's
> bottled dressings.

> 26.   KFI was thus formed as an entity separate and distinct from
> Ken's Steak House the restaurant and KSH.  Moreover, and as the

---

[7] Although the complaint is not verified, the allegations in the complaint are
repeated in various affidavits filed by KFI in support of its motion for a preliminary
injunction (which was eventually withdrawn).  (See generally Memorandum of Law in
Support of Plaintiff's Motion for Preliminary Injunction (Docket # 4)).

Crowley family had done prior to KFI's incorporation, KFI continued to be <u>solely, exclusively</u>, and legally responsible for the manufacture, bottling, labeling, advertising, promoting, marketing and sale of the bottled salad dressings incorporating the marks KEN'S and KEN'S STEAK HOUSE.

87.   ... KSH's menus and other in-house documentation <u>falsely portrayed KSH</u> as having originated the bottled dressings or <u>as having an affiliation with the manufacturer of the bottled dressings, KFI</u>.

93.   ... only KFI has ever manufactured and sold bottled dressings. This statement and information attributed to KSH's president <u>intentionally confuses the clear separation between the extremely limited restaurant services business of KSH (a single restaurant), and the enormously successful nationally and internationally known products of KFI</u>.

97.   These statements <u>falsely state and imply that Tim Hanna and the KSH restaurant are affiliated with KFI, or that</u> Tim Hanna himself, or <u>the restaurant play some role in the manufacture and sale of the KFI's products, when neither is the case</u>.

99.   The article also attributes to Tim Hanna the statement that "Ken's Foods continues to mix dressings for the restaurant," which <u>falsely implies that Ken's Foods has some business relationship or special agreement with the KSH restaurant, when in fact it does not.  Instead, KSH has merely from time to time purchased KFI commercial products like any consumer or customer</u> ....

123.   KSH's acts have caused and are likely to cause confusion, mistake or deception among consumers, through <u>false statements and misrepresentations indicating</u> that KSH manufactures KFI's trade-marked bottled dressings, <u>that KSH is responsible for (or sponsors) KFI's trademarked bottled dressings, and that the business of KFI is owned by or affiliated with KSH</u>.

(Emphasis added).

In short, based on KFI's own steadfast assertion that KSH "is not connected with the activities performed by [KFI] under the mark," <u>Buffet v. Chi-Chi's, Inc.</u>, 226 U.S.P.Q. at

429, as well as its denial that KSH has "an ownership interest in" or has the right to "endorse" or "sponsor" KFI's products, In re Sloppy Joe's Int'l, Inc., 43 U.S.P.Q.2d at 1353, KFI's motion for summary judgment on the claim of false connection should be denied.

Finally, this court finds that there are material facts in dispute as to the fourth element of the false connection claim, namely whether "the fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when the applicant's mark is used on its goods or services." In re N. Am. Free Trade Assoc., 43 U.S.P.Q.2d 1282, 1284 (TTAB 1997). KFI asserts, in a footnote, that Ken's Steak House does not have a strong national or international reputation. (Pl.'s Mem. at 12 n.5). However, its attorney asserted the contrary in a letter to Ken's Restaurant Services in 1985. (Wodarski Aff. Ex. 23 ("[t]he restaurant has developed a national restaurant and clientele . . ."). Moreover, KSH has commissioned a survey that "demonstrates that consumers throughout the U.S. are indeed likely to be confused by Ken's Foods' trademark usage." (Def.'s Opp. at 22 n.18; KSH Ex. GG). This issue will also need to be resolved by a factfinder. These disputed facts are a further reason why the motion for summary judgment on the claim of false connection should be denied.

### D.  Cancellation of Trademarks Based on Misrepresentation of Source

In Counts X and XI of its Counterclaim, KSH also seeks cancellation of the trademarks due to an alleged "misrepresentation of source" in violation of 15 U.S.C. § 1064(3). This court agrees with KFI that this provision of the Lanham Act has no

application to the situation presented by the instant case, which is a dispute as to ownership of the marks, right to use the marks, and the connection, if any, between the parties. Therefore, this court recommends that KFI's motion for summary judgment on the misrepresentation of source counterclaims be allowed.

A registration can be canceled at any time, "if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used."  15 U.S.C. § 1064(3).  While the scope of this provision is ill-defined,[8] it is agreed that the challenger must prove "blatant, aggressive misuse of a registered mark . . . in order to trade upon the renown and reputation of the party seeking cancellation" in order to show that cancellation is warranted.  Heroes Inc. v. Boomer Esiason Hero's Foundation, Inc., 43 U.S.P.Q.2d 1193, 1198 (TTAB 1997) (quoting SunAmerica Corp. v. Sun Life Assur. Co. of Can., 890 F. Supp. 1559, 1581 (N.D. Ga. 1994) (quoting McDonnell Douglas Corp. v. Nat'l Data Corp., 228 U.S.P.Q. 45, 46 (TTAB 1985)).  There must be a deliberate effort to pass off one's goods as those of another.  "Willful use of a confusingly similar mark is not sufficient."  McCarthy on Trademarks, § 20:60 at 20-115.

Many cases addressing cancellation for misrepresentation of source claims involve one party imitating a successful and well-established competitor manufacturer of identical goods.  See, e.g., Cuban Cigar Brands N.V. v. Upmann Int'l Inc., 457 F. Supp. 1090, 1101

---

[8] While KSH argues that this provision should be given an expansive reading, it cites no cases which have done so.  (See Def.'s Opp. at 13-14).

(S.D.N.Y. 1978) (trademark registration for defendant cigar manufacturer canceled where

defendant "blatantly misused these marks" and engaged in a course of conduct designed "to

blur whatever distinctions exist between the parties' products, and trade upon the renown

and reputation of plaintiff"), aff'd (without op.), 607 F.2d 995 (2d Cir. 1979); H.H. Scott,

Inc. v. Annapolis Electroacoustic Corp., 195 F. Supp. 208, 217 (D. Md. 1961) (defendant's

trademark canceled on grounds of misrepresentation of source where defendant "attempted

to persuade and persuaded prospective purchasers to believe that" the components and

consoles it was selling were the product of the plaintiff, an established manufacturer of hi-

fidelity components).  Another line of cases involves the situation where one of two

companies that were previously affiliated, typically in a distributorship relationship,

attempts to pass its product off as that of its former affiliate, despite the fact that the

relationship had been terminated.  See, e.g., Liquid Glass Enter., Inc. v. Liquid Glass Indus.

of Canada, Ltd., 14 U.S.P.Q.2d 1976, 1980 (E.D. Mich. 1989) ("former distributor of

plaintiff's product . . . should have a duty similar to that of a licensor to distinguish its

goods" – defendants' mark was canceled due to its extensive efforts to convince the public

that product was that of a successful competitor's).  The present situation, however, is

significantly different.

The instant case does not involve a dispute between two salad dressing manufac-

turers.  Thus, there is no contention that a consumer has been induced to pick up KFI's salad

dressing wrongfully believing that it was picking up a competitor's product.  While there is

no hard and fast rule that the parties be in direct competition, the crux of the

misrepresentation of source claim is to avoid confusing the public into believing that it was

buying one product when, in fact, it was buying another.  Taking advantage of another's

identity in order to promote your own product, on the other hand, falls within the "false

connection" prohibition discussed above.

In the instant case, the issue raised in the counterclaim is whether KFI is wrongfully

asserting a relationship with KSH and/or an ownership interest in the marks KEN'S and

KEN'S STEAK HOUSE.  Those issues can be resolved in connection with other claims,

including the "false connection" claim and trademark infringement charges. The

"misrepresentation of source" is simply the wrong provision of the Lanham Act under

which the issues in dispute can be resolved.  See Theodore H. Davis, Jr., Cancellation

Under Section 14(3) For Registrant Misrepresentation of Source, 85 Trademark Rep. 67,

80 (1995) (allegations (similar to those raised by KSH in the instant case) that registrant

was not the owner of the mark as of the filing date, or that the registration was fraudulently

obtained, not properly addressed in misrepresentation of source claim).  As the Trademark

Trial and Appeal Board stated (albeit in dicta) in Global Maschinen GmbH v. Global

Banking Systems, Inc., 227 U.S.P.Q. 862, 868 (TTAB 1985), while the language of the

misrepresentation of source provision is broad, "the decisional law has nevertheless been

limited to cases involving deliberate and blatant misrepresentation of source wherein the

registration is merely a vehicle for the misuse rather than evidence of even a colorable

ownership claim, and where the mark is intentionally displayed in such a manner as to

facilitate passing off the goods as those of another." Id. at n.3.[9] KSH does not bottle a

competing salad dressing, in fact, it does not manufacture any products for retail sale. KFI

has, at least, a long-standing colorable claim of ownership of the registered trademarks.

Under such circumstances, a claim of misrepresentation of source cannot stand. Id. For

these reasons, this court recommends that KFI's motion for summary judgment on the

claim of misrepresentation of source be allowed.

---

[9] In Global Maschinen, the plaintiff/petitioner was the manufacturer of coin sorting machines, and the defendant/registrant was a former distributor of its products. The defendant/ registrant registered the trademark GLOBAL for coin counting machines, and the action was one to cancel the registration. Plaintiff's original claim of misrepresentation of source was waived, although the Board noted that there was no evidence to support this claim. Since the machinery indicated the real manufacturer of the machine, the Board concluded that there could be no inference "that registrant had used GLOBAL to misrepresent source as that term is understood in the decisions interpreting Section 14(c)." Id. at n.3. The mark was canceled, however, on the grounds that the registrant was not the owner of the trademark GLOBAL, and that the registration had been obtained by fraud. While KSH challenges the merits of this case, it cites to no cases finding the decision to be in error.

### E.  Laches

Finally, KFI contends that KSH's efforts to cancel the trademarks on the grounds of false connection and misrepresentation of source are barred by the doctrine of laches.[10] This court concludes, as it did previously in connection with KFI's motion to dismiss, that material facts are in dispute as to this issue.  Consequently, this court recommends that KFI's motion for summary judgment, insofar as it is based on laches, be denied.

"The defense of laches in a trademark proceeding recognized under 15 U.S.C. § 1069 requires a showing of undue delay in asserting rights against a claimant to a conflicting mark and prejudice resulting therefrom."  Nat'l Cable Television Assoc., Inc. v. Am. Cinema Editors, Inc., 937 F.2d 1572, 1580 (Fed. Cir. 1991).  The party asserting the defense of laches bears the burden of proof.  See Bridgestone/Firestone Research, Inc. v. Automobile Club, 245 F.3d at 1361.  "The equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case" and thus requires a fact-specific inquiry.  Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V., 17 F.3d 38, 44 (2d Cir.), cert. denied sub nom., Leisure Time Productions, B.V. v. Tri-Star Pictures,

---

[10]  The parties agree that laches is not a defense to the counterclaim for fraud.  See McCarthy § 20:77 at 20-135; TBC Corp. v. Grand Prix Ltd., 12 U.S.P.Q.2d 1311, 1313 (TTAB 1989) and authorities cited.  Despite KSH's contention to the contrary (Def.'s Opp. at 24), it is clear that laches may be asserted as a defense to the false connection and misrepresentation of source claims.  See 15 U.S.C. § 1069 ("In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied"); see also Bridgestone/Firestone Research, Inc. v. Automobile Club de L'Ouest de la France, 245 F.3d 1359, 1363 (Fed. Cir. 2001) (since § 2(a) ground of false suggestion of a connection protects individuals, not public, laches may be asserted as a defense).

Inc., 513 U.S. 987, 115 S. Ct.. 484, 130 L. Ed. 2d 396 (1994), and cases cited.  It is true, as

KFI asserts, that the facts may be so clear so that the evaluation of the defense of laches

may be decided in the context of a summary judgment motion.  See, e.g., Copy Cop, Inc. v.

Task Printing, Inc., 908 F. Supp. 37, 48 (D. Mass. 1995) (defendant failed to establish

laches as a matter of law).  More commonly, however, "because the correct disposition of

the equitable defense of laches can only be made 'by a close scrutiny of the particular facts

and a balancing of the respective interests and equities of the parties, as well as of the

general public,' . . . it usually requires the kind of record only created by full trial on the

merits."  Country Floors, Inc. v. Partnership Composed of Gepner & Ford, 930 F.2d 1056,

1066 (3d Cir. 1991) (quoting 2 J. McCarthy, Trademarks and Unfair Competition 573 (2d

ed. 1984)).  That is the situation presented here.

KFI contends that KSH knew of KFI's trademark registrations when they issued in

1980, and was certainly aware of the marks in connection with the dealings with Ken's

Restaurant Systems Inc. in the 1985-86 time period.  However, during this period KFI's

own counsel made representations to KSH that KFI's marks did not limit KSH's use of the

marks, and that KFI's marks were not inconsistent with KSH's registration of the same

marks.  Thus, a jury could find that KSH was unaware that it needed to protect its rights vis-

a-vis KFI at that time.[11]  "In determining whether a party has too long 'slept on its rights' it is necessary to show that the party knew or should have known that it had a right of action, yet did not act to assert or protect its rights."  Bridgestone/Firestone Research, Inc. v. Automobile Club, 245 F.3d at 1361-62.  As of the mid-1980's, there was nothing which put KSH on notice as a matter of law.

Subsequent events still leave open the question whether laches can be established. KFI points to its counsel's letters of 1993 and 1996 objecting to KSH's portrayal of a salad dressing bottle in its advertisements.  The first letter came within days of Florence Hanna's death and was promptly addressed by KSH.  (Wodarski Aff. Ex. 29).  Significantly, in his response to KFI, Mark Hanna noted that he was confused as to why KFI "would object to the association of Ken's Steak House and Ken's Foods in advertising."  (Id.).  However, thereafter, KFI itself continued to advertise its origins in Ken's Steak House.  (See, e.g., KSH Ex. Z (KFI 2002 Internet listings)).  Thus, a jury could find that KSH was not put on notice in 1993 that KFI was of the opinion that there was no connection between the companies.  "A reasonable businessman should be afforded some latitude to assess both the impact of" the challenged conduct "as well as the wisdom of pursuing litigation on the issue."  Copy Cop, Inc. v. Task Printing, Inc., 908 F. Supp at 47 (quoting Tandy Corp. v.

---

[11]  The parties spend a lot of time arguing about whether KSH's claim that is was unsophisticated in trademark matters has any significance to the issue of laches.  The fact that KFI's attorney represented to KSH that KSH could register the mark KEN'S STEAK HOUSE is, in this court's view, sufficient to raise a jury question relating to laches.  Thus, this court will not address the viability of a "lack of sophistication" claim.

Malone & Hyde, Inc., 769 F.2d 362, 366 (6th Cir. 1985), cert. denied, 476 U.S. 1158, 106 S. Ct. 2277, 90 L. Ed. 2d 719 (1986)).

Similarly, in 1996 KSH agreed to remove references to "the intellectual property" of KFI, although it is unclear what that meant in actuality.  After this incident, KFI again continued advertising some relationship between the companies.  Consequently, while the facts relied on by KFI may be relevant to the issue of laches, they are far from conclusive. The issue of laches should be resolved by the jury, which can assess whether KSH's delay in bringing suit was unreasonable under the circumstances.  See Olay Co., Inc. v. Cococare Prods., Inc., No. 81-4102, 1983 U.S. Dist. Lexis 17613, at *53 (S.D.N.Y. Apr. 19, 1983) (unpublished op.) (plaintiff not obligated "to jump on its horse and ride off in all directions at the same time" when confronted with infringements, no laches when plaintiff took action in a step-by-step coherent fashion over several years).

Other arguments raised by KSH in furtherance of its position that laches does not apply are equally fact-based and, therefore, will not be discussed in detail.  For example, KSH argues that laches does not apply in cases where "competing marks are closely similar and used on closely related goods" because "[p]rotection of the public from confusion is held to dominate over any injury caused by delay or acquiescence."  McCarthy on Trademarks, § 31:37 at 31-81.  As KFI correctly points out, however, courts have applied laches even in light of a finding of confusion caused by a lengthy period of use of the same name by two companies.  See, e.g., Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209,

217 (2d Cir. 2003).  Moreover, in the instant case the parties' relationship and the extent, if any, of confusion, remain facts to be decided at trial.

KSH also contends that KFI's "unclean hands" bars the application of the doctrine of laches.  While this principle finds support in the law, its application, if any, to the instant case remains uncertain.  See Hermes Int'l v. Lederer de Paris Fifth Ave. Inc., 219 F.3d 104, 107 (2d Cir. 2000) (where defendant intentionally infringed on trademarks, defendant could not assert laches as a defense to suit for injunctive relief).  It is premature to determine whether KFI has "unclean hands," so a ruling that laches is inapplicable as a matter of law in the instant case is not warranted.

In sum, the issue of laches in this case requires an analysis of the complete record at trial.  For this reason, this court recommends that KFI's motion for summary judgment based on laches be denied.

## IV. **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that KFI's Motion for Partial Summary Judgment (Docket #130) be ALLOWED as to the claims based on fraud and misrepresentation of source, and be DENIED as to the counts alleging false connection.[12]

_____/s/_____

Judith Gail Dein
United States Magistrate Judge

---

[12] The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4-5 (1st Cir. 1998).